J-S42025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAVAR L. THOMPSON | : | |
| | : | |
| Appellant | : | No. 1680 MDA 2017 |

Appeal from the PCRA Order September 22, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003090-2013

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:              **FILED AUGUST 28, 2018**

Shavar L. Thompson appeals from the order entered on September 22, 2017, which denied his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

We adopt the following statement of facts and procedural history from the PCRA court's memorandum.  **See** PCRA Ct. Memo., 08/29/2017, at 1-3.[1] In spring 2013, police in Harrisburg learned from a confidential informant (CI) that Thompson was engaged in the sale of narcotics.  Thereafter, while under police surveillance, the CI conducted two controlled buys of cocaine from

---

*   Retired Senior Judge assigned to the Superior Court.

[1] The certified record mislabels this memorandum as an order filed August 29, 2017.  The court filed its order dismissing Thompson's petition on September 22, 2017.

Thompson. On a third occasion, an undercover police officer purchased cocaine from Thompson. Following this third incident, police arrested him.

Although appointed counsel, Thompson elected to proceed *pro se* until reinstating appointed counsel just prior to trial. Following trial, a jury convicted Thompson of three counts of delivery of a controlled substance but acquitted him of a fourth count alleging possession with intent to deliver.[2]

In March 2014, the court sentenced Thompson to 45 to 108 months of incarceration. Thompson timely filed post-sentence motions, which were denied, and he then appealed. This Court affirmed his judgment of sentence, and the Supreme Court denied his petition for allowance of appeal. ***Commonwealth v. Thompson***, 120 A.3d 378 (Pa.Super. 2015) (unpublished memorandum), *appeal denied*, 125 A.3d 1201 (Pa. 2015).

In September 2016, Thompson timely and *pro se* filed a petition seeking collateral relief, asserting myriad issues. PCRA counsel was appointed. In July 2017, following several extensions granted by the PCRA court, counsel filed a petition to withdraw and a ***Turner***/***Finley*** letter analyzing Thompson's claims and concluding they were without merit.[3] The court granted counsel's petition to withdraw; Thompson timely responded to counsel's letter; and thereafter, the PCRA court dismissed Thompson's petition.

---

[2] ***See*** 35 P.S. § 780-113(a)(30).

[3] ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988).

Thompson timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The PCRA court issued a responsive statement in which it directed our attention to its previous memorandum addressing Thompson's petition.

Thompson raises the following issues, reorganized and restated for clarity:

1. Whether the PCRA court erred in denying relief, where the trial court had erred previously when it

   a. granted the Commonwealth's motion to amend the criminal information against Thompson;

   b. forced Thompson to proceed *pro se* and did not inquire properly whether substitute counsel should have been appointed;

   c. forced Thompson to proceed with a jury trial without reviewing the merits of his pretrial motions;

2. Whether the PCRA court erred in denying relief, where the Commonwealth committed **Brady**[4] violations when it

   a. suppressed illegal audio recordings of the alleged drug transactions; and

   b. intentionally withheld a report by Officer Olivia Conner; and

3. Whether the PCRA court erred in denying relief, where trial counsel provided ineffective assistance when she

   a. failed to challenge the admissibility of tainted narcotics evidence and failed to preserve such a challenge for appeal;

---

[4] **See Brady v. Maryland**, 83 S. Ct. 1194 (1963).

b. failed to challenge the jury panel as an unfair representation of the community and thus violated his right to a trial by his peers;

c. failed to challenge the anonymity of the CI or secure her testimony at trial; and

d. failed to amend the omnibus pretrial motion in order to suppress the allegedly unconstitutional, audio surveillance by police investigators.

**See** Thompson's Br. at 4-5 (edited for clarity).

We review an order denying a petition under the PCRA to determine whether the findings of the PCRA court are supported by record evidence and free of legal error. **Commonwealth v. Ragan**, 923 A.2d 1169, 1170 (Pa. 2007). We afford the court's factual findings deference unless there is no support for them in the certified record. **Commonwealth v. Brown**, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citing **Commonwealth v. Anderson**, 995 A.2d 1184, 1189 (Pa. Super. 2010)). Further, we may affirm the PCRA court's decision on any grounds if the record supports it. **See Commonwealth v. Reed**, 107 A.3d 137, 140 (Pa.Super. 2014).

**Allegations of Direct Trial Court Error**

In his first issue, Thompson asserts several errors by the trial court. **See** Thompson's Br. at 13-23. According to Thompson, the trial court erred when it granted the Commonwealth's motion to amend the criminal information against him. **Id.** at 13-15. Thompson further asserts that the trial court erred in "forcing" him to proceed *pro se*, in light of his irreconcilable differences with appointed counsel. **Id.** at 15-19. Finally, according to

- 4 -

Thompson, the trial court failed to review the merits of his pretrial motions filed *pro se*. ***Id.*** at 19-23.

Each of these assertions by Thompson constitutes an allegation of direct, trial court error. Thompson does not plead or attempt to prove ineffective assistance of counsel with respect to these assertions. **See** PCRA Petition, 09/29/2016, at ¶ 13(a)-(c); Thompson's Br. at 13-23. However, Thompson failed to preserve these assertions before the trial court or raise them on direct appeal. Accordingly, we deem them waived. **See Commonwealth v. Harris**, 852 A.2d 1168, 1171-72 (Pa. 2004) (denying collateral relief where petitioner failed to raise confrontation claim on direct appeal); **Commonwealth v. Williams**, 732 A.2d 1167, 1176 (Pa. 1999) (denying collateral relief where general claims of trial court error were not raised on direct appeal); 42 Pa.C.S. §§ 9543(a)(3), 9544(b).

Absent waiver, we note with approval certain of the PCRA court's conclusions that these claims lack merit. **See, e.g.**, PCRA Ct. Memo. at 3-4 (recognizing that the trial court may permit the Commonwealth to amend an information pursuant to Pa.R.Crim.P 564, provided it does not "charge an additional or different offense," quoting from the prior version of the rule), 5-6 (rejecting Thompson's attempt to secure a second appointment of counsel where he had appointed counsel and then temporarily elected to proceed *pro se*, where initially appointed counsel was ready to proceed and Thompson merely sought to delay trial). Further, to the extent that Thompson suggests the amendment to the information resulted in an illegal sentence, Thompson

is incorrect. *See* PCRA Petition, 09/29/2016, at ¶ 13(a) (suggesting that information was amended "for the purpose of mandatory minimum sentencing"); Thompson's Br. at 13-14 (same). Thompson was not sentenced to a mandatory minimum sentence. *See* Criminal Dkt No. CP-22-CR-0003090-2013 at p. 4-5; PCRA Ct. Memo. at 3-4.

## Alleged *Brady* Violations

Next, Thompson asserts the Commonwealth suppressed (1) illegal audio recordings of the narcotics transactions and (2) the police report filed by Officer Olivia Conner, both constituting a *Brady* violation. As with his assertions of trial court error, Thompson's *Brady* claims are waived.

> [A] prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

*Commonwealth v. Roney*, 79 A.3d 595, 607 (Pa. 2013) (formatting modified; citations omitted). Prejudice occurs if, had there been disclosure, there is a reasonable probability that the result of a proceeding would have been different. *Id.* However, *Brady* is not violated when an appellant knew or could have uncovered the evidence in question, or where the evidence was available from other sources. *Id.* at 608. Further, where a PCRA petitioner could have raised a *Brady* claim at trial or on direct appeal, that claim is

waived. *Id.* at 609 (citing in support *Commonwealth v. Chmiel*, 30 A.3d, 1111, 1129-30 (Pa. 2011)).

Here, Thompson knew of the allegedly missing evidence during trial. *See, e.g.*, Notes of Testimony (N.T.), 03/18-19/2014, at 81 (cross-examination testimony from Detective Dennis Simmons explaining that there was no audio recording made from a wire placed on undercover Ofc. Conner for her safety); 106-07 (cross-examination testimony of Ofc. Conner admitting that she had written a report, that it was not in her possession, and that she was aware it was not provided to Thompson). Thus, as both of the alleged violations could have been raised at trial or on direct appeal, they are waived. *Roney*, 79 A.3d at 609; 42 Pa.C.S. §§ 9543(a)(3), 9544(b).

Further, even if we were to examine the merits of these claims, no relief would be due. Regarding his first assertion, that the Commonwealth suppressed illegal audio recordings, Thompson concedes that no such recordings exist. *See* Thompson's Br. at 23 (suggesting that the existence of suppressed evidence is irrelevant). Regarding Officer Connor's report, in light of the overwhelming evidence of Thompson's guilt, including eyewitness testimony of his role in the narcotics transactions, Thompson cannot establish prejudice. Thus, his *Brady* claims lack merit. *Roney*, 79 A.3d at 607.

### Allegations of Trial Counsel Ineffectiveness

Finally, Thompson contends that trial counsel was ineffective. According to Thompson, counsel was ineffective when she (1) failed to challenge (a) the admissibility of tainted narcotics evidence; (b) the composition of the jury

panel; (c) the anonymity of the CI; and (2) failed to amend the omnibus pretrial motion in order to suppress the allegedly unconstitutional, audio surveillance by police investigators. We will address each claim in turn.

To be eligible for relief for an ineffectiveness claim, a petitioner must establish that counsel's deficient performance "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). We presume counsel is effective. *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009). To overcome this presumption, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012). A claim will be denied if the petitioner fails to meet any one of these prongs. *See Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa.Super. 2016) (citing *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009)).

Thompson suggests that narcotics evidence collected during the investigation was tainted. *See, e.g.*, Thompson's Br. at 28. According to Thompson, the narcotics evidence collected on June 3, 2013, was maintained improperly, its original packaging destroyed, and it arrived at the criminal lab

in unsealed baggies. *Id.* Thus, Thompson concludes, trial counsel should have challenged the admissibility of this evidence and properly preserved this claim for direct appeal. *Id.* at 28, 33, 45.

Thompson has not accurately portrayed the record. The Commonwealth elicited extensive testimony establishing the manner in which this narcotics evidence was collected, maintained, and tested. **See, e.g.**, N.T. at 60-61 (testimony from Detective Dennis Simmons describing two quantities of crack cocaine collected June 3, 2013, from (1) controlled buy and (2) search incident to Thompson's arrest, and further describing manner in which he packaged narcotics for testing); 118-26 (testimony from Officer Jason Turchetta describing his role as evidence custodian responsible for maintaining evidence collected during investigation and transporting evidence to criminal lab for testing); 148-56 (testimony from Mr. Albert Lanttanzi, criminal lab scientist, who stated narcotics arrived in separate, sealed packaging, was tested by him, and then replaced into two, separate, heat-sealed bags). Based upon our review of the record, Thompson's underlying claim alleging tainted narcotics evidence is without merit. Thus, Thompson's ineffectiveness claim fails. *See Treiber*, 121 A.3d at 445.

Thompson next suggests that the venire from which his jury was selected did not fairly represent the community. Thompson's Br. at 37. According to Thompson, the venire failed to include sufficient "urban American minorities" such that the final, empaneled jury could "fairly weigh the conflicting testimony of a white female officer." *Id.* at 38. Further, according

to Thompson, when he expressed this concern to counsel, she declined to object. *Id.* at 38-39. Thus, Thompson concludes, counsel was ineffective. *See id.* at 39.

To establish a *prima facie* case that a community's jury pool selection process violates the Sixth Amendment's fair cross-section requirement, a defendant must show:

> 1) the group allegedly excluded is a distinctive group in the community; 2) representation of this group in the pool from which juries are selected is unfair and unreasonable in relation to the number of such persons in the community; and 3) the under-representation is due to the systematic exclusion of the group in the jury selection process.

*Commonwealth v. Lopez*, 739 A.2d 485, 495 (Pa. 1999).

Here, Thompson has made no effort to establish either the second or third requirement. Thompson does not quantify the minority representation on the venire from which his jury was selected, nor does he compare this representation proportionally with the community at large. Further, he neither pleads nor attempts to prove that the alleged under-representation is due to the systematic exclusion of this group. Accordingly, we conclude that this claim is without merit, and counsel was not ineffective for not making it. *See Treiber*, 121 A.3d at 445.

Thompson also suggests that the identity of and testimony from the CI was essential to impeach the testimony of police investigators and establish an entrapment defense. Thompson's Br. at 40-41. According to Thompson, without this evidence, he was denied a fair trial. *Id.* at 41. Therefore,

Thompson concludes, trial counsel's failure to secure testimony from the CI constituted ineffective assistance. *See id.* at 39, 41.

Before disclosure of an informer's identity is required, "the record should at least suggest a reasonable possibility that the information might be helpful, so that it would be unfair to withhold it." *Commonwealth v. Herron*, 380 A.2d 1228, 1230 (Pa. 1977). Here, Thompson points to no evidence of record that would support an entrapment defense. Thus, his bald assertion that testimony from the CI was essential is merely self-serving and does not establish a reasonable possibility that it would be helpful. *Id.* Further, in light of the extensive evidence against Thompson, including eyewitness testimony and substantial physical evidence collected during the three controlled buys, we conclude that Thompson cannot establish a reasonable probability that testimony from the CI – even if favorable to him – would change the result of his trial. Thus, in the context of his ineffective assistance of counsel claim, Thompson cannot establish prejudice. *See Koehler*, 36 A.3d at 132.

Finally, Thompson suggests that counsel was ineffective when she refused to file a motion to suppress evidence based upon the Commonwealth's alleged violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701-5782. Thompson's Br. at 41-44. In this claim, Thompson renews certain allegations raised previously in his *Brady* claim, in which he asserted that police investigators illegally recorded his crimes. *Id.*; *see also id.* at 23-24.

> This Court has previously found that the failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel. However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move.

*Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016) (formatting modified; internal citations omitted).

As noted previously, investigators did not create an audio recording from a wire placed on undercover Officer Conner for her safety. Thompson has cited no evidence to the contrary. Moreover, even if such a recording existed, the Commonwealth did not seek to introduce it at trial. Thus, there was no valid basis for counsel to file a motion to suppress this illusory evidence. Thompson's claim is without merit. *Id.*; *see Treiber*, 121 A.3d at 445.

For these reasons, we discern no error in the PCRA court's dismissal of Thompson's petition. He is entitled to no relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/28/2018

- 12 -